**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| L.D. 1 and L.D. 2, MINORS, by NICOLE PETERSON and THOMAS DUONG,<br><br>                    Plaintiffs,<br><br>     v.<br><br>WANABANA, LLC and WANABANA USA, LLC, DOLLAR TREE STORES, INC., and JOHN DOE CORPORATIONS 1-10,<br><br>                 Defendant. | Civil Case No. 1:24-cv-20827-AHS<br><br>Judge Anuraag Hari Singhal<br><br>Oral Argument Requested |

**DEFENDANT DOLLAR TREE STORES, INC.'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER**
**FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) and 12(b)(6)**

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL BACKGROUND ......................................................................................... 2

III.  ARGUMENT .................................................................................................................. 4

   A.   Legal Standard. ........................................................................................................... 4

   B.   Florida Lacks Personal Jurisdiction Over Dollar Tree. ............................................. 5

      1.   There is No General Jurisdiction Over Dollar Tree. ............................................ 6

      2.   There is No Specific Jurisdiction Over Dollar Tree. ........................................... 7

   C.   Plaintiffs Fail to State a Claim Against Non-Manufacturer Seller Dollar Tree. ........ 9

      1.   Under Florida's Choice of Law Rules, North Carolina Law Controls. ................ 9

      2.   Counts I (Strict Liability Failure to Warn), IV (Gross Negligence), VI (Negligence),
           VII (Strict Seller Liability), and X (Negligent Misrepresentation) Should be Dismissed
           Under North Carolina Law. ............................................................................... 15

   D.   Plaintiffs' Claims Fail for Additional, Independent Reasons. .................................. 18

      1.   Plaintiffs' Negligent Misrepresentation Claim Fails Rule 9(b). ....................... 18

      2.   Count VIII (Breach of Express Warranty) Should Be Dismissed. ............... 19

      3.   Plaintiffs Lack Standing to Pursue Count XII (Violation of FDUTPA). ......... 19

      4.   Plaintiffs' Unjust Enrichment Claims Are Duplicative. ................................... 20

IV.   CONCLUSION ........................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrews v. Cont'l Ins.*,
    444 So. 2d 479 (Fla. 5th DCA 1984) ....................................................................13

*Arndt v. Extreme Motorcycles*,
    No. 1:07-cv-302, 2007 WL 4570861 (W.D.N.C. Dec. 26, 2007)................................2, 16, 17

*Bank of Am., N.A. v. Zaskey*,
    No. 9:15-cv-81325, 2016 WL 2897410 (S.D. Fla. May 18, 2016)..........................................20

*Bates v. Cook, Inc.*,
    509 So. 2d 1112 (Fla. 1987)........................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................4, 5, 19

*Bishop v. Fla. Specialty Paint Co.*,
    389 So. 2d 999 (Fla. 1980)....................................................................10, 11, 15

*Brewer v. Dodson Aviation*,
    447 F.Supp. 2d 1166 (W.D. Wash. 2006)..................................................................16

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
    582 U.S. 255 (2017)..........................................................................8, 9

*Brown Jordan Int'l, Inc. v. Carmicle*,
    No. 0:14-cv-60629, 2016 WL 815827 (S.D. Fla. Mar. 2, 2016) ...........................................11

*Catalyst Pharms., Inc. v. Fullerton*,
    748 F. App'x 944 (11th Cir. 2018)..........................................................................4

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..........................................................................1, 6

*Davis v. Siloo Inc.*,
    47 N.C. App. 237 (1980) ..................................................................................17

*Diulus v. Am. Express Travel Related Servs. Co., Inc.*,
    823 F. App'x 843 (11th Cir. 2020).........................................................................4

*Doe v. Hyatt Hotels Corp.*,
    No. 1:22-cv-20923, 2023 WL 7181703 (S.D. Fla. Oct. 17, 2023) .......................................7, 8

*Evans v. Westinghouse Elec. Co.*,
    No. 7:06-cv-42, 2007 WL 9718849 (E.D.N.C. Feb. 8, 2007) ................................................17

*Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*,
    241 So. 3d 938 (Fla. 3d DCA 2018) ....................................................................................7

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ..............................................................................................17

*Goodnight v. Boston Sci. Corp.*,
    548 F.Supp. 3d 1325 (S.D. Fla. 2020) ...........................................................................11, 12

*Happer v. Solvay Pharm., Inc.*,
    588 F.3d 1318 (11th Cir. 2009) ..........................................................................................18

*Harbor Point Homeowners' Ass'n, Inc. v. DJF Enter., Inc.*,
    697 S.E.2d 439 (N.C. Ct. App. 2010) ................................................................................19

*Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*,
    704 F.3d 927 (11th Cir. 2013) ..............................................................................................9

*Karhu v. Vital Pharma., Inc.*,
    No. 13-60768-CIV, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) .........................................20

*Kiser v. Tractor Supply Co.*,
    No. 1:12-cv-00042, 2013 WL 1623609 (W.D.N.C. Apr. 15, 2013).......................................17

*Leonard v. Bed, Bath & Beyond, Inc.*,
    No. 5:15-cv-00284, 2016 WL 1064515 (E.D.N.C. Mar. 15, 2016).......................................17

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ............................................................................................5

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ............................................................................................5

*McCauley v. Hospira, Inc.*,
    No. 1:11-cv-108, 2011 WL 3439145 (M.D.N.C. Aug. 5, 2011) ...........................................19

*McLaurin v. East Jordan Iron Works, Inc.*,
    666 F.Supp. 2d 590 (E.D.N.C, 2009)...................................................................................10

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
    288 F.3d 1264 (11th Cir. 2002) ............................................................................................6

*Melton v. Century Arms, Inc.*,
    No. 16-21008-CIV, 2017 WL 1063449 (S.D. Fla. Mar. 20, 2017) .......................................20

*Morrison v. Sears, Roebuck & Co.*,
    319 N.C. 298 (1987) ............................................................................................17

*Nationwide Mut. Insur. Co. v. Weeks-Allen Motor Co.*,
    18 N.C. App. 689 (1973) ....................................................................................16

*Navas v. Brand*,
    130 So. 3d 766 (Fla. 3d DCA 2014) ....................................................................6

*Nicholson v. American Safety Util. Corp.*,
    124 N.C. App. 59 (1996) ....................................................................................10

*Norris v. Honeywell Int'l, Inc.*,
    No. 8:22-cv-1675, 2023 WL 6256183 (M.D. Fla. Sept. 26, 2023)...............1, 8, 9

*Piamba Cortes v. Am. Airlines, Inc.*,
    177 F.3d 1272 (11th Cir. 1999) ..........................................................................13

*Prohias v. Pfizer, Inc.*,
    490 F.Supp. 2d 1228 (S.D. Fla. 2007) ...............................................................20

*Proprietors Ins. Co. v. Valsecchi*,
    435 So. 2d 290 (Fla. Dist. Ct. App. 1983) ....................................................11, 13

*RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*,
    362 F.Supp. 3d 1226 (M.D. Fla. 2019).............................................................6, 7

*Richmond, Fredericksburg & Potomac R.R. v. Forst*,
    4 F.3d 244 (4th Cir. 1993) ..................................................................................17

*Rife v. Newell Brands, Inc.*,
    632 F.Supp. 3d 1276 (S.D. Fla. 2022) ...............................................................20

*Rivell v. Private Health Care Sys., Inc.*,
    520 F.3d 1308 (11th Cir. 2008) ...........................................................................4

*Rohlik v. I-Flow Corp.*,
    No. 7:10-cv-173, 2011 WL 2669302 (E.D.N.C. July 7, 2011).............................18

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999).............................................................................................5

*Ryder Truck Rental, Inc. v. Rosenberger*,
    699 So. 2d 713 (Fla. 3d DCA 1997) ...................................................................13

*Samuel Friedland Family Enter. v. Amoroso*,
    630 So. 2d 1067 (Fla. 1994)...............................................................................10

*Schulman v. Inst. for Shipboard Educ.*,
   624 F. App'x 1002 (11th Cir. 2015) ................................................................7

*SIG, Inc. v. AT&T Digital Life, Inc.*,
   971 F.Supp. 2d 1178 (S.D. Fla. 2013) ............................................................18

*Snow v. DirecTV, Inc.*,
   450 F.3d 1314 (11th Cir. 2006) ........................................................................4

*State Farm Mut. Auto. Ins. Co. v. Olsen*,
   406 So. 2d 1109 (Fla. 1981) ............................................................................10

*Stoddard v. Wyeth, Inc.*,
   630 F.Supp. 2d 631 (E.D.N.C. 2009) ..............................................................16

*Storms v. Haugland Energy Grp., LLC*,
   No. 18-cv-80334, 2018 WL 4347603 (S.D. Fla. Aug. 17, 2018) ......................4

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
   447 F.3d 1357 (11th Cir. 2006) ........................................................................4

*Teva Pharm. Indus. v. Ruiz*,
   181 So. 3d 513 (Fla. 2d DCA 2015) .................................................................7

*Thompson v. Carnival Corp.*,
   174 F.Supp. 3d 1327 (S.D. Fla. 2016) ..............................................................6

*United Technologies Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) ........................................................................4

*Virgin Health Corp. v. Virgin Enters. Ltd.*,
   393 F. App'x 623 (11th Cir. 2010) ...................................................................5

*W. Coast. Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
   287 F. App'x 81 (11th Cir. 2008) ...................................................................18

*Washington v. Trinity Indus., Inc.*,
    No. 1:15-cv-517, 2017 WL 752166 (M.D.N.C. Feb. 27, 2017) ......................14

*West v. Caterpillar Tractor Co.*,
   336 So. 2d 80 (Fla. 1976) ................................................................................10

*Woodruff-Sawyer & Co. v. Ghilotti*,
   255 So. 3d 423 (Fla. 3d DCA 2018) ..............................................................6, 8

*Ziglar v. E. I. Du Pont De Nemours and Co.*,
   53 N.C. App. 147 (1981) .................................................................................17

v

**Statutes**

15 U.S.C. § 2310(d) ...................................................................................................19

Fla. Stat. § 501.201, *et seq.* .................................................................2, 3, 19, 20

Fla. Stat. § 48.193(2) ................................................................................................5, 6

N.C. Gen. Stat. § 25–2–313 ...............................................................................19

N.C. Gen. Stat. § 99B ............................................................................ *passim*.

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ..............................................................................................5

Fed. R. Civ. P.  9(b) ...........................................................................................2, 18

Fed. R. Civ. P. 12(b)(2) ............................................................................................4

Fed. R. Civ. P.  12(b)(6) ....................................................................................4, 17

Restatement (Second) of Conflict of Laws § 6(2) ...................................11, 13

Restatement (Second) of Conflict of Laws § 145 ....................................11, 12, 14, 15

## I.      INTRODUCTION

Plaintiffs, North Carolina residents, have filed suit in Florida against Dollar Tree Stores, Inc. ("Dollar Tree"), a Virginia corporation with its headquarters in Virginia, seeking redress for alleged injuries that arise out of the purchase and consumption of WanaBana Apple Cinnamon Fruit Puree Pouches ("Product") in North Carolina. Plaintiffs do not allege to have bought the Product, sustained injury, or received treatment in Florida. Indeed, no aspect of Plaintiffs' claims against Dollar Tree involves the State of Florida.

This Court has no jurisdiction over a nonresident plaintiff's claims against nonresident defendants where no part of the plaintiff's claims arise out of activities within the forum. *Norris v. Honeywell Int'l, Inc.*, 2023 WL 6256183, at *8 (M.D. Fla. Sept. 26, 2023). There is no general jurisdiction over Dollar Tree as Plaintiffs do not allege—nor could they—that Dollar Tree, a citizen of Virginia, is at home in Florida. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014) (a corporation's place of incorporation and principal place of business are the "paradigm" forums where it "is fairly regarded at home."). Nor is there a basis for specific jurisdiction over Dollar Tree. *Daimler*, 571 U.S. at 127; *Norris*, 2023 WL 6256183, at *8 ("[S]pecific jurisdiction exists when the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state."). Plaintiffs do not allege any connection with Florida, much less that any of their claims against Dollar Tree arise out of any of its activity in Florida. Their Complaint should be dismissed in its entirety on that basis alone.

Even if this Court could exercise personal jurisdiction over Dollar Tree, Plaintiffs' claims against Dollar Tree are barred by North Carolina's innocent seller statute. N.C. Gen. Stat § 99B. Under "well settled" North Carolina law, a nonmanufacturing seller like Dollar Tree is immune

from product liability claims that arise out of a latent defect in a product it simply sold. *Arndt v. Extreme Motorcycles*, 2007 WL 4570861, at \*4 (W.D.N.C. Dec. 26, 2007).

The remaining claims also fail for independent reasons. Plaintiffs' claims for negligent misrepresentation do not pass the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Their claims for breach of express warranty fail because Plaintiffs do not identify an affirmative representation Dollar Tree made concerning the Products. Plaintiffs lack standing to bring claims under the Florida Unfair and Deceptive Trade Practices Act where those claims did not arise out of conduct occurring or originating in the State of Florida. And Plaintiffs' claims for unjust enrichment fail as duplicative of their other causes of action against Dollar Tree.

## II.    FACTUAL BACKGROUND

Plaintiffs—a married couple with two children ages 1 and 3—are all citizens and residents of Hickory, North Carolina. Complaint, ECF 1-1 ("Compl.") at ¶ 10. Plaintiffs bring claims arising out of injuries their children allegedly sustained through consumption of the Product. *Id.* at ¶ 5. WanaBana, LLC, WanaBana USA, LLC, and related entities (collectively "WanaBana") are the manufacturers of the Product, and designers of its packaging and labeling. *Id.* at ¶¶ 7, 18, 19. WanaBana sold the Product to Dollar Tree, who then offered the Product for sale in certain of its stores. *Id.* at ¶ 21. As the Complaint correctly alleges, Dollar Tree is a Virginia corporation, with its principal place of business in Chesapeake, Virginia. *Id.* at ¶ 20.

Plaintiffs allege that they began purchasing the Product at a Dollar Tree store "in or around February 2023" (*id.* at ¶ 36) and that both children "consumed several pouches" of WanaBana's Product "from March 2023 to August 2023" (*id.* at ¶¶ 11, 12). Notably, Plaintiffs do not identify any Dollar Tree store within Florida where any purchase was made.  Plaintiffs claim that they relied on statements that appeared on the Products' packaging, which they rightfully allege was

designed by WanaBana. *Id.* at ¶¶ 7, 38, 123-27, 276. Plaintiffs do not identify a single affirmative statement Dollar Tree made about the Products.

The Complaint further alleges that annual check-ups in June 2023 revealed elevated blood lead levels in the children. *Id.* at ¶¶ 42, 43. Plaintiffs allegedly determined in August 2023 that the source of lead was the Product. *Id.* at ¶ 51, 52. Soon after, Plaintiffs alerted their local public health authorities in North Carolina, who they allege tested the Product and found that it contained excessive levels of lead. *Id.* at ¶¶ 53-55. Plaintiffs do not allege that any of these events occurred in the State of Florida.

In late October, the United States Food and Drug Administration ("FDA") learned about the North Carolina investigation related to children with elevated blood lead levels. *Id.* at ¶¶ 67, 68. The FDA informed WanaBana of these results, and, WanaBana announced a voluntary recall of all WanaBana Apple Cinnamon Fruit Puree Pouches. *Id.* at ¶ 69.

Plaintiffs do not allege that they bought the Product after the recall or that their children consumed the Product after the public was alerted by the FDA of the possible contamination. *Id. at* ¶¶ 11, 12. Plaintiffs do not (and cannot) allege that Dollar Tree is the manufacturer of the Product; Plaintiffs do not (and cannot) allege that Dollar Tree controlled or even influenced the manufacturing process; and Plaintiffs do not (and cannot) allege that Dollar Tree knew about this alleged contamination during the period of their alleged purchase and consumption of the Product.

Plaintiffs bring claims against Dollar Tree for strict liability failure to warn, negligence, gross negligence, strict seller liability, breach of express warranty, negligent misrepresentation, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and unjust enrichment – all of which arise out of Dollar Tree's sale of an allegedly defective product it did

not manufacture. At the same time, Plaintiffs include WanaBana, the actual manufacturer, as a co-defendant to this action. WanaBana has appeared and removed the action to this Court. ECF 1.

## III.   ARGUMENT

### A.   <u>Legal Standard.</u>

Under Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss a complaint for lack of personal jurisdiction over a defendant. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "Vague and conclusory allegations do not satisfy this burden." *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018) (citation and quotations omitted); *see also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (Plaintiff's "vague and conclusory allegations" in his complaint "are insufficient to establish a prima facie case of personal jurisdiction over [defendant].") (footnote omitted). "If the plaintiff doesn't meet his burden ... the motion [to dismiss] should be granted." *Diulus v. Am. Express Travel Related Servs. Co., 823* F. App'x 843, 849 (11th Cir. 2020) (citations and quotations omitted). "[T]he standards enunciated in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) apply to a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2)." *Storms v. Haugland Energy Grp., LLC*, 2018 WL 4347603, at *2 (S.D. Fla. Aug. 17, 2018), *report and recommendation adopted*, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018).

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *Rivell v. Private Health Care Sys.,*

*Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). To state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

B.   <u>**Florida Lacks Personal Jurisdiction Over Dollar Tree.**</u>

Personal jurisdiction "is an essential element of the jurisdiction of a district...court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation and quotations omitted). In assessing whether a nonresident defendant is subject to exercise of personal jurisdiction, federal courts apply a two-step test to determine "whether the exercise of jurisdiction (1) comports with the long-arm statute of the forum; and (2) does not violate the Due Process Clause of the Fourteenth Amendment." *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 626 (11th Cir. 2010).

"Florida's long-arm statute provides for both general and specific personal jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. § 48.193(1)–(2)). "Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990). In determining whether a complaint alleges sufficient jurisdictional facts to

satisfy Florida's long-arm statute, "the trial court must strictly construe the statute in favor of the non-resident defendant[]." *Navas v. Brand*, 130 So. 3d 766, 770 (Fla. 3d DCA 2014).

### 1. There is No General Jurisdiction Over Dollar Tree.

Plaintiffs do not—and cannot—credibly allege that this Court has general jurisdiction over Dollar Tree. Florida's long arm statute permits the court to exercise jurisdiction consistent with the reach of due process under the Fourteenth Amendment. *See RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F.Supp. 3d 1226, 1233 (M.D. Fla. 2019)(Fla. Stat. § 48.193(2)'s "'substantial and not isolated activity' requirement is 'the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment'" (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). Thus, in analyzing whether general jurisdiction is authorized under Section 48.193(2), the Court need only consider whether exercising such jurisdiction over Defendant satisfies due process. *Id.*

Absent "exceptional cases," the bases for the exercise of general jurisdiction over a corporation are limited to its place of incorporation and its principal place of business. *Thompson v. Carnival Corp.*, 174 F.Supp. 3d 1327, 1334 (S.D. Fla. 2016) (citing *Daimler*, 571 U.S. at 139 n.19). Merely doing business in a forum state is insufficient to confer general jurisdiction. *Daimler,* at 138, 139 n.19 (rejecting the notion that general jurisdiction is appropriate in every state in which a corporation engages in "substantial, continuous, and systematic course of business" as "unacceptably grasping"); *id.* at 140 n.20 ("a corporation that operates in many places can scarcely be deemed at home in all of them") (internal marks omitted). Since *Daimler*, Florida courts have consistently refused to exercise personal jurisdiction over corporations that were neither incorporated nor headquartered in Florida. *See, e.g.*, *Woodruff-Sawyer & Co. v. Ghilotti*, 255 So. 3d 423, 429 (Fla. 3d DCA 2018); *Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d

938, 945 (Fla. 3d DCA 2018); *Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 521 (Fla. 2d DCA 2015) ("In the present case, neither Teva USA nor Teva Industries is incorporated in Florida or has its principal place of business here. Therefore, pursuant to Daimler, Florida does not have general jurisdiction over either company.").

Dollar Tree is not "at home" in Florida. Dollar Tree is a Virginia corporation with its principal place of business in Chesapeake, Virginia. Compl. at ¶ 20. General jurisdiction does not exist under these facts. *Doe v. Hyatt Hotels Corp.*, 2023 WL 7181703, at *8 (S.D. Fla. Oct. 17, 2023) (finding a lack of general jurisdiction where "[n]one of the [] Defendants are incorporated or have their principal place of business in Florida").

While Dollar Tree does operate stores in Florida—as it does in each of the 48 states in the contiguous United States and Washington D.C.—the operation of a fraction of its stores in Florida does not "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business" sufficient to confer general jurisdiction. *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015); *see also RG Golf Warehouse*, 362 F.Supp. 3d at 1235 ("[E]xercising general jurisdiction over Defendant based upon its sales in Florida would subject it to jurisdiction in each state in which its 'sales are sizable' and would fail to provide Defendant 'with some minimum assurance as to where' it would be liable to suit.") (internal citations omitted). Plaintiffs have not alleged any facts that would render Dollar Tree "at home" in Florida. This Court therefore does not have general jurisdiction over Dollar Tree.

### 2.     There is No Specific Jurisdiction Over Dollar Tree.

Plaintiffs also cannot credibly allege that this Court has specific jurisdiction over Dollar Tree. "[F]or a court to exercise specific jurisdiction, the lawsuit 'must arise out of or relate to the defendant's contacts with the forum.'" *Norris*, 2023 WL 6256183, at *8 (quoting *Bristol-Myers*

*Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017) ("*Bristol-Myers*")). Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotation omitted); *see also Woodruff-Sawyer*, 255 So. 3d at 430 (plaintiff did not sufficiently demonstrate "the existence of a causal connection between the defendant's activities in Florida and the plaintiff's cause of action"). Put another way, even if Plaintiffs alleged that Dollar Tree had some contacts in the forum, "without the alleged tort arising out of or relating to [their] contacts with Florida, Due Process prevents the exercise of personal jurisdiction over [] Defendants." *Hyatt Hotels Corp.*, 2023 WL 7181703, at *5. No forum-specific contacts exist here.

The United States Supreme Court's decision in *Bristol-Myers* is dispositive. In *Bristol-Myers*, a group of more than 600 plaintiffs sued Bristol-Myers Squibb ("BMS") in California state court, alleging injuries from the use of its drug, Plavix. *Bristol-Myers*, 582 U.S. at 259. Like the Plaintiffs here, most of the plaintiffs in *Bristol-Myers* were not residents of the forum state; BMS was neither incorporated nor headquartered in the forum state, but did sell its product there; and the nonresident plaintiffs did not allege that they bought or used the product in the forum state, or that they were treated for their injuries in the forum state. *Id.* at 259, 264-65.

The Supreme Court held that BMS's general connections with the forum did not allow California to assert specific personal jurisdiction. *Id.* at 265. The Court explained that because "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California," there was no link between California and the nonresidents' claims to confer specific jurisdiction. *Id.* at 264. The Court continued, "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not

8

allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 265 (emphasis added).

As they relate to jurisdiction, the facts here are no different than *Bristol-Myers*. Plaintiffs are nonresident North Carolina citizens who cannot establish any nexus between their claims against Dollar Tree and Florida. Dollar Tree does business in Florida, but—just as in *Bristol-Myers*—Plaintiffs fail to allege that any of their claims arise out of Dollar Tree's activities in Florida. *See Norris*, 2023 WL 6256183, at *8 ("Contrary to Plaintiffs' conclusory assertion in their response in opposition, no allegations specify any unlawful acts by either Defendant or any executives that occurred in Florida. As a result, Plaintiffs have not demonstrated that the non-Florida Plaintiffs' claims arise out of or relate to Defendants' contacts with Florida."). Because Plaintiffs here cannot establish that connection, there is no specific jurisdiction.

* * * * *

Plaintiffs do not and cannot credibly allege any facts that would permit this Court to assert general or specific jurisdiction over Dollar Tree. Because they cannot, this Court should dismiss their Complaint as alleged against Dollar Tree in its entirety.

### C.    <u>Plaintiffs Fail to State a Claim Against Non-Manufacturer Seller Dollar Tree.</u>

Even if this Court finds that it has jurisdiction over Dollar Tree (which it does not), Plaintiffs fail to state a claim against Dollar Tree.

### 1.    Under Florida's Choice of Law Rules, North Carolina Law Controls.

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). Florida law dictates that "in tort actions involving more than one state, all substantive issues should be determined in accordance with the law of the state having the most significant

relationship to the occurrence and the parties." *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1114 (Fla. 1987); *see Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1000 (Fla. 1980); *State Farm Mut. Auto. Ins. Co. v. Olsen*, 406 So. 2d 1109, 1110 (Fla. 1981). Here, that state is North Carolina.

      a.     <u>There is a conflict between Florida and North Carolina law.</u>

The first step in the choice-of-law analysis is to determine whether the interested states' laws conflict. Here, product liability law in Florida and North Carolina do. Unlike North Carolina, which insulates innocent sellers from liability for unknown product defects and bars strict liability in product liability actions, Florida imposes strict liability on sellers for harm caused to the ultimate consumer if (1) the seller is engaged in the business of selling the product, and (2) the product is expected to and reaches the consumer without substantial change in the condition in which it is sold. *Compare* N.C. Gen. Stat § 99B (parenthetical on law), *with West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976) (adopting doctrine of strict liability for sellers of a defective product).

In North Carolina, a non-manufacturing seller who is acting as a "mere conduit" of the product has no affirmative duty to inspect and test a product made by a reputable manufacturer, unless the seller knows or has a reason to know of the product's dangerous propensity. *See Nicholson v. American Safety Util. Corp.*, 124 N.C. App. 59, 68 (1996). "North Carolina courts are particularly apt to apply this rule where the alleged defect in the product is latent." *McLaurin v. East Jordan Iron Works, Inc.*, 666 F.Supp. 2d 590, 601 (E.D.N.C, 2009). In contrast, Florida courts have expanded strict product liability to non-manufacturing defendants in the distribution chain, including retailers, wholesalers, and distributors. *See Samuel Friedland Family Enter. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994).

b.   <u>Under Florida's Choice of Law Rules, North Carolina Law Controls.</u>

Given this conflict, in a personal injury action Florida courts apply "the local law of the state where the injury occurred" unless—as stated in the Restatement (Second) of Conflict of Laws—another state "has a more significant relationship" to the issue.  The analysis focuses on the relevant *contacts* under Restatement § 145(2) and the *policy factors* under Restatement § 6(2).  *See, e.g.*, *Bates*, 509 So. 2d at 1114; *Proprietors Ins. Co. v. Valsecchi*, 435 So. 2d 290, 294 (Fla. Dist. Ct. App. 1983) ("Evaluation under the significant relationships test involves a two-pronged inquiry directed toward review of the factors listed in section 145 and in section 6.").

Restatement § 145(2) identifies four types of contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *See Bishop*, 389 So. 2d at 1001. A court should evaluate these contacts "according to their relative importance with respect to the particular issue." *Id.* (quoting Restatement (Second) of Conflict of Laws § 145). "But the first contact—the place of injury—is generally the most important." *Goodnight v. Boston Sci. Corp.*, 548 F.Supp. 3d 1325, 1333 (S.D. Fla. 2020); *see also Brown Jordan Int'l, Inc. v. Carmicle*, 2016 WL 815827, at *47 (S.D. Fla. Mar. 2, 2016) ("The presumption of the significant relationship test is that generally the law of the forum where the injury occurred determines the substantive issues unless another state has a more compelling interest." (citing *Bishop*, 389 So. 2d at 1001)).

The "principles stated in § 6" include: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the pertinent policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6)

certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *See Goodnight*, 548 F.Supp. 3d at 1333.

> (i)    *North Carolina, the Place of Injury, has More Significant*
> *Contacts.*

Under the first prong of the analysis, the relevant contacts to Plaintiffs' claims are all in North Carolina, where Plaintiffs live and where the minor children suffered their alleged injuries. Florida, on the other hand, has no relevant contacts with Plaintiffs' claims. Dollar Tree is a Virginia corporation with its principal place of business in Virginia. Compl. ¶ 20. Plaintiffs and their children are residents of North Carolina. *Id*. ¶ 10. Plaintiffs' domicile is the most important contact for determining the law of damages because, as addressed below, a plaintiff's domiciliary state has the strongest interest in making the plaintiff whole. *See* Restatement (Second) of Conflict of Laws § 145(2) ("These contacts are to be evaluated according to their relative importance with respect to the particular issue.").

Plaintiffs do not allege that their children consumed the Product in Florida or that they became ill in Florida. And while Plaintiffs allege that Dollar Tree "has sold the Products to consumers…in Florida and Miami-Dade County" (Compl. ¶ 33), they do not (and presumably cannot) allege that *they* purchased the Product in Florida, or that they were treated by any physicians in Florida. Instead, Plaintiffs suffered the alleged injuries while living in North Carolina, Plaintiffs tested their North Carolina residence for lead (Compl. ¶ 44), and Plaintiffs reported the lead exposure to their local North Carolina public health authorities, who then investigated their claim. *See* Compl. ¶¶ 50-57, 66.  None of these facts implicate Florida.

> (ii)   *The Relevant Policy Factors Point to North Carolina.*

Applying the relevant policy factors under Restatement § 6(2) likewise points to North Carolina as having the most significant relationship to this litigation.

*The needs of the interstate and international systems.*  In considering the "needs of the interstate and international systems," courts seek to apply choice-of-law principles that "further harmonious relations between states and…facilitate commercial intercourse between them" with "regard for the needs and policies of other states and of the community of states." Restatement (Second) of Conflict of Laws § 6 cmt. d. There is no basis for applying Florida law across state lines to a transaction wholly outside the state. Thus, applying North Carolina law for claims that arose in North Carolina best serves the Section 6 interests in harmonious relations between states.

*The relevant policies of the forum.*  Florida courts recognize that "Florida has an interest in protecting its citizens and visitors" to the state. *Ryder Truck Rental, Inc. v. Rosenberger*, 699 So. 2d 713, 716 (Fla. 3d DCA 1997); *Proprietors Ins.*, 435 So. 2d at 297 ("Florida's interest lies in the protection of its residents…"). But Florida "possesses no interest in compensating domiciliaries of other jurisdictions more richly than they would receive in their own courts." *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1301 (11th Cir. 1999). Where foreign plaintiffs are injured outside Florida's borders—even by Florida residents—Florida's interests recede. *See, e.g.*, *Ryder Truck Rental*, 699 So. 2d at 716 ("While Florida has an interest in protecting its citizens and visitors from persons who put dangerous instrumentalities in another's hands, we are not here dealing with Florida plaintiffs, either residents or visitors.").

In this case, "[n]o public policy of Florida requires vindication and no citizen of Florida requires protection." *Andrews v. Cont'l Ins.*, 444 So. 2d 479, 482 (Fla. 5th DCA 1984). Plaintiffs are citizens and residents of North Carolina who have not alleged any connection to Florida. Plaintiffs suffered their injuries in North Carolina, and the only connection Plaintiffs offer between their claims against Dollar Tree and Florida is that Dollar Tree operates "three Miami-Date County

locations" which have no stated connection to Plaintiffs. Compl. ¶ 21. Florida policy does not support applying Florida law based on such a tenuous connection to the forum.

*The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue.* The purpose of North Carolina's Product Liability Act is to protect the state's businesses interests and guarantee the continued availability of products liability insurance coverage to North Carolina retailers. *Washington v. Trinity Indus., Inc.*, 2017 WL 752166, at *7 (M.D.N.C. Feb. 27, 2017) (noting that North Carolina's prohibition on strict liability in product liability actions is to protect North Carolina businesses). Applying Florida law to claims originating in North Carolina would frustrate the legislative purpose of North Carolina's product liability scheme. Accordingly, North Carolina's interests in governing the conduct of businesses that serve its residents predominate over Florida's interest in applying its law to nonresident plaintiffs, out-of-state conduct, and out-of-state injuries.

*The protection of justified expectations.* The protection of justified expectations strongly supports application of North Carolina law. Plaintiffs could not have expected to recover against Dollar Tree—a Virginia company—under Florida product liability law for alleged events and injuries that occurred in North Carolina. On the other hand, Dollar Tree, in operating its stores in North Carolina, should expect to be protected by provisions governing its operations in North Carolina.

*The basic policies underlying the particular field of law and certainty, predictability and uniformity of result and ease in the determination and application of the law to be applied.* The Restatement provides commentary on the proper weight that should be attributed to each factor depending on the type of case involved. In personal injury actions, the place where the injury occurred predominates. Restatement (Second) of Conflict of Laws § 145 cmt. e (1971). A rule

which exempts a defendant from liability, such as North Carolina's product liability law, is entitled to the same consideration in the choice of law process as is a rule which imposes liability. *Id.* at cmt. c. Further, the law of the state where a plaintiff is injured and domiciled—here, North Carolina—is easier to determine and apply, and its application leads to predicable results. *Bishop*, 389 So. 2d at 1001.

* * * * *

North Carolina has the most significant relationship to Plaintiffs' product liability claims. Plaintiffs are North Carolina residents who do not allege that any action relevant to their purchase, consumption, diagnosis, and treatment occurred outside North Carolina. Comparatively, Plaintiffs, their injuries, and Dollar Tree's alleged underlying conduct have no connection to Florida. Therefore, where a conflict exists, North Carolina's law applies.

    **2.** **Counts I (Strict Liability Failure to Warn), IV (Gross Negligence), VI Negligence), VII (Strict Seller Liability), and X (Negligent Misrepresentation) Should be Dismissed Under North Carolina Law.**

        a.   Plaintiffs' Product Liability and Negligence Claims Are Barred by North Carolina's Innocent Seller Statute.

Counts One, Four, Six, Seven, and Ten—strict liability for failure to warn, gross negligence, negligence, strict seller liability, and negligent misrepresentation—are barred by North Carolina's innocent seller statute, which shields retailers, such as Dollar Tree, from liability for harm caused by a product the retailer purchased in sealed containers and sold downstream. Applying North Carolina law, this Court should dismiss these claims against Dollar Tree.

First, Counts One and Seven alleging strict liability for failure to warn and strict seller liability should be dismissed because North Carolina's product liability statute explicitly rejects strict liability claims against a retailer in tort product liability actions. N.C. Gen. Stat § 99B-1.1. North Carolina recognizes that imposing strict liability on a retailer, such as Dollar Tree, when it

had no way of knowing the risks of the Product, clashes with the bases for strict liability against a manufacturer. Courts consistently recognize that strict liability claims cannot be maintained against innocent sellers and retailers under North Carolina's product liability law. *See, e.g.*, *Brewer v. Dodson Aviation*, 447 F.Supp. 2d 1166, 1183 (W.D. Wash. 2006); *Stoddard v. Wyeth, Inc.*, 630 F.Supp. 2d 631 (E.D.N.C. 2009); *Arndt*, 2007 WL 4570861, at *4 ("To the extent plaintiffs have attempted to bring claims against [Defendant] for injuries that purportedly resulted from a defective product, those claims are precluded as a matter of well settled state law inasmuch as [Defendant] is a seller of the goods in question.").

Counts Four, Six, and Ten alleging gross negligence, negligence, and negligent misrepresentation should be dismissed because Dollar Tree acquired and sold the Product in sealed pouches and at no point had an opportunity to inspect the contents of the Product for lead before Plaintiffs purchased and consumed it. N.C. Gen. Stat. § 99B-2 explains:

> No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession.

As Plaintiffs point out, none of the Product's packaging suggests the presence—or even possibility—of lead in the Product. Compl. ¶¶ 123-27. Additionally, courts have rejected allegations that a retailer has a duty to conduct independent testing or inspection. *See Nationwide Mut. Insur. Co. v. Weeks-Allen Motor Co.*, 18 N.C. App. 689 (1973) (a seller "would not…be responsible for a defect subsequently discovered which was not discernable by reasonable inspection at the time of sale."). The North Carolina district court's reasoning in *Arndt v. Extreme Motorcycles* is instructive:

16

> A seller of goods has no duty to conduct independent testing of products it sells, inasmuch as retailers typically do not possess the skills, expertise, or resources one would need to do so. Further there is no societal interest in requiring a retailer to warrant that the products he sells are free of manufacturing defects, inasmuch as the retailer is in no position to either detect or remedy latent defects prior to the sale. *Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 306 (1987)("a mere conduit of the product is under no affirmative duty to inspect or test for a latent defect....").

2007 WL 4570861, at *4.

North Carolina courts routinely dismiss similar product liability negligence and failure to warn claims against innocent sellers. *See Kiser v. Tractor Supply Co.*, 2013 WL 1623609, at *4 (W.D.N.C. Apr. 15, 2013) (dismissing product liability claims against seller based on negligence, breach of implied warranty, and failure to warn because there was no evidence the seller knew or should have known of the alleged defect); *Evans v. Westinghouse Elec. Co.*, 2007 WL 9718849, at * 3 (E.D.N.C. Feb. 8, 2007) (dismissing negligence claims against vacuum cleaner seller based on seller's failure to warn or inspect because the plain language of N.C. Gen. Stat § 99B-2 prevents recovery against sellers of sealed products); *Ziglar v. E. I. Du Pont De Nemours and Co.*, 53 N.C. App. 147, 152 (1981) ("[I]t is well-established that a seller of a product made by a reputable manufacturer, where he acts as a 'mere conduit,' 'is under no affirmative duty to inspect or test for a latent defect, and therefore, liability cannot be based on a failure to inspect or test in order to discover such defect and warn against it.'"); *Davis v. Siloo Inc.*, 47 N.C. App. 237, 267 (1980) (affirming the dismissal of negligence claims against the distributors of a toxic substance).

Where "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint,'" the court may reach the defense at the Rule 12(b)(6) stage. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)); *see also Leonard v. Bed, Bath & Beyond, Inc.*, 2016 WL 1064515, at *1 (E.D.N.C. Mar. 15, 2016). Here, all the facts necessary for Dollar Tree's defense as an

17

innocent seller appear on the face of the complaint: *WanaBana* "selected and used ingredients" from an exclusive supplier to manufacture the Product (Compl. ¶ 120); Dollar Tree merely sold the Product (*id.* ¶ 21), and did so in a sealed "pouch" (*id.* ¶ 128  n.41). Accordingly, the Court has the information it needs to dismiss Counts One, Four, Six, Seven, and Ten, and should do so.

**D.**   **Plaintiffs' Claims Fail for Additional, Independent Reasons.**

**1.**   **Plaintiffs' Negligent Misrepresentation Claim Fails Rule 9(b).**

This Court should separately dismiss Plaintiffs' negligent misrepresentation claim (Count X) because Plaintiffs do not identify a single misrepresentation Dollar Tree made with particularity. To state a claim for negligent misrepresentation under either Florida or North Carolina law, a plaintiff must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See Rohlik v. I-Flow Corp.*, 2011 WL 2669302, at *2 (E.D.N.C. July 7, 2011) ("[C]laims of negligent misrepresentation fall within the purview of Rule 9(b)."); *SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F.Supp.2d 1178 (S.D. Fla. 2013) (same). Rule 9(b) is satisfied only if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Happer v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009). Here, Plaintiffs allege that co-defendant WanaBana designed the Product's labeling and packaging (Compl. at ¶ 7), yet fail to identify a single affirmative statement made by Dollar Tree concerning the Product, much less the time, place, or content of any representation (*see*, *generally*, *id.* at ¶¶ 263-82). Devoid of specificity, Plaintiffs broadly allege that "Defendants made numerous misrepresentations and omissions about the health, safety, and nutrition of their Products on its advertising and labeling." *Id.* at ¶ 269. These generalized, conclusory allegations are not enough to withstand Rule 9(b) scrutiny. *See W. Coast. Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81,

86 (11th Cir. 2008) ("[G]eneralized allegations lumping multiple defendants together are insufficient."). Under either state's laws, Plaintiffs' negligent misrepresentation claims should be dismissed.

### 2.    Count VIII (Breach of Express Warranty) Should Be Dismissed.

Plaintiffs' claim for breach of express warranty fails for similar reasons. In order to recover for a breach of express warranty under state or federal law, a plaintiff must allege that a defect exists, that a warranty covered the item, and that the seller breached the warranty. N.C. Gen. Stat. § 25–2–313 (2007); 15 U.S.C. § 2310(d); *McCauley v. Hospira, Inc.*, 2011 WL 3439145, at *6 (M.D.N.C. Aug. 5, 2011); *see also Harbor Point Homeowners' Ass'n, Inc. v. DJF Enter., Inc*., 697 S.E.2d 439, 447 (N.C. Ct. App. 2010). An express warranty is defined as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain...." N.C. Gen. Stat. § 25–2–313.

"[C]onclusory recitation[s] of the elements of a breach of warranty claim [are] simply insufficient to state a claim for breach of express warranty." *McCauley*, 2011 WL 3439145, at *6. In this context, North Carolina courts reject conclusory notions that a product sold is "safe and effective" where the plaintiff does not further specify the "alleged express warranty or its content" and "does not address at all how the warranty was made, to whom it was made, or any other details with regard to the alleged warranty." *Id.* ("These 'naked assertions' are 'devoid of further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 557)). Plaintiffs do no better here – their express warranty claim should be dismissed.

### 3.    Plaintiffs Lack Standing to Pursue Count XII (Violation of FDUTPA).

As North Carolina residents who do not allege to have purchased the Product in Florida or that the offending conduct occurred in Florida, Plaintiffs cannot state a claim for a violation of the

FDUTPA. The FDUTPA only applies (1) to conduct involving Florida consumers or (2) non-Florida residents "if the offending conduct took place predominantly or entirely in Florida." *Bank of Am., N.A. v. Zaskey*, 2016 WL 2897410, at *9 (S.D. Fla. May 18, 2016) (quoting *Karhu v. Vital Pharma., Inc.*, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013)). Neither is the case here. As explained above, Plaintiffs are North Carolina residents (Compl. at ¶ 10); Dollar Tree is a Virginia corporation (*id.* at ¶ 20); and nowhere do Plaintiffs allege that any conduct involving their claims and Dollar Tree took place in the State of Florida. *Cf. Melton v. Century Arms, Inc.*, 2017 WL 1063449, *8 (S.D. Fla. Mar. 20, 2017) (non-resident who purchased products outside the state and alleged injuries outside the state may pursue FDUTPA claim where company was based in Florida and complained of conduct occurred in Florida). Plaintiffs' claims under the FDUTPA are misplaced as alleged against Dollar Tree and should not survive dismissal.

### 4.    Plaintiffs' Unjust Enrichment Claims Are Duplicative.

Plaintiffs' unjust enrichment claims rely on the same factual predicates as their other causes of action. Compl. ¶ 304 ("Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged herein."). These claims are duplicative and should be dismissed. *See Rife v. Newell Brands, Inc.*, 632 F.Supp. 3d 1276, 1316 (S.D. Fla. 2022) (dismissing unjust enrichment claim that "cover[ed] the same subject matter" as breach of express warranty claim); *Prohias v. Pfizer, Inc.*, 490 F.Supp. 2d 1228, 1236–37 (S.D. Fla. 2007) (dismissing unjust enrichment claims as duplicative of plaintiffs' consumer fraud act claim).

## IV.    CONCLUSION

Dollar Tree requests that the Court dismiss Plaintiffs' Complaint, as alleged against Dollar Tree, in its entirety and with prejudice.

Dated: March 28, 2024
      Washington D.C.           Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

 */s/ Rachel L. Forman*
Rachel L. Forman
601 Massachusetts Ave, NW
Washington, DC 20001
Phone: (202) 942-5000
Email: rachel.forman@arnoldporter.com

*Attorneys for Defendant, Dollar Tree Stores, Inc.*

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on March 28, 2024, the forgoing document was electronically filed with the Clerk of Court for the Southern District of Florida through the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: March 28, 2024                     */s/ Rachel L. Forman*

                                       Rachel L. Forman